Irene REESE, etc., et al.,
Plaintiffs–Appellees,

v.

Steve ANDERSON, et al.,
Defendants–Appellants.

No. 90–8247
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 21, 1991.

James Ludlum, Ludlum & Ludlum, Austin, Tex., for defendants-appellants.

El–Hadi T. Shabazz, Shabazz & Assoc., Waco, Tex., Glenn O. Lewis, Lewis & Haley, Ft. Worth, Tex., for plaintiffs-appellees.

Before GOLDBERG, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an interlocutory appeal from denial of summary judgment in a § 1983 action.

A robbery suspect was shot and killed by a Waco police officer. His mother sued the officer, police chief, city manager, and the City of Waco, alleging lack of justification and failure to train and supervise. Defendants sought summary judgment on the grounds of qualified immunity. The district court denied the motion, and defendants appealed. We reverse as to the individual defendants but dismiss the City's appeal for want of jurisdiction.

*Facts*

On June 14, 1989, a robbery occurred at a convenience store in Waco. Responding to a radio call, Waco police officer Steve Anderson spotted the suspected getaway car and gave chase at speeds of forty to sixty miles per hour. During the chase, according to Anderson and not disputed by Reese, the front-seat passenger twice dis-

carded beige objects that appeared to be portions of a cash register. Eventually the car spun out of control and came to stop with the passenger side directly in front of Anderson's now-stopped patrol car. The driver and his three passengers remained inside. The front-seat passenger, it was later learned, was Richard Crawford, Jr., age twenty, plaintiff's decedent. The driver was Crawford's sixteen year-old brother.

The parties agree that Officer Anderson drew his gun and repeatedly ordered the occupants to raise their hands. Crawford repeatedly raised and then lowered his hands. After this occurred several times, Anderson shot Crawford once in the head, from a distance of about ten feet, killing him. However, the parties differ as to precisely how this transpired.

Defendant Anderson's narrative, set out in his affidavit, is as follows: Anderson opened his car door and leaned out halfway. He drew his service weapon and pointed it at the driver and front-seat passenger (Crawford). Anderson's patrol-car siren, which he had activated during the chase, continued to sound; shutting off the siren would have meant diverting his attention, switching his gun from hand to hand, and placing himself in danger. Above the noise of the siren, Anderson repeatedly yelled for the driver and Crawford to raise their hands. They complied, and each time he yelled, Crawford nodded. Anderson inferred from these actions that the occupants heard and understood his commands despite the siren.

As Anderson continued to yell, Crawford started reaching down with his right hand, lowering it out of Anderson's sight behind the still-closed car door. Anderson yelled again for Crawford to raise his hands, and he complied immediately, replying with words that looked like "Okay" or "Alright." After a couple of seconds, Craw-

ford again started reaching down. Again Anderson yelled, and again Crawford complied. All the while, Anderson had his gun pointed at Crawford.

At this point in his narrative, Anderson notes that "The passenger in the front seat [Crawford] looked to me like a black male known as Bennie Sanders [who] I knew ... had been arrested ... several months back for armed robbery."

After a couple more seconds, Crawford again began reaching down. This time he turned slightly to his left, away from Anderson, leaning over and tipping his right shoulder downward. He reached further down toward the floorboard and to the left side of his seat.

"At this point," Anderson recites, "I felt strongly the subject had picked up a gun and was going to shoot me as soon as he raised his hands up above the closed door." Anderson was ten feet away from Crawford and feared he would be shot before having time to react. Nearby was Officer Mary Crook, who had joined in the pursuit, and Anderson feared that she too was in danger. When Crawford started to sit up, raising his right hand, Anderson shot him once in the head, killing him.

Crawford's mother, plaintiff Reese, sets out a significantly different account in her complaint.[1] As she describes it, approximately nine police officers with guns drawn surrounded the suspect car after the chase ended. Anderson stood behind his patrol car door, less than ten feet from the stopped car, and ordered the car's occupants to raise their hands. Crawford lowered his *left* hand to shut off the ignition, then raised it with nothing in his hand. Anderson began to shout abusively. Crawford lowered his left hand again, placing it on his brother's shoulder. At no time did Crawford bend or lean over, reach down with or lower his right hand, make any sudden movements, or display any weapons or other objects in his hands.

---

1. The fact that this account is set out in Reese's complaint, but not supported by affidavits, is significant, as we discuss *infra*. Here we present her version of events not to suggest that she has supported this account by competent evidence—we hold *infra* that she has not—but simply to present her side of the story.

At this point, Crawford either raised his left hand, then lowered it again to his brother's shoulder, or else he simply continued resting it on his brother's shoulder; Reese's pleading is somewhat unclear. Crawford turned his head towards his brother with an expression indicating "'I'm sorry to have gotten you into this.'" Crawford then turned his head towards Anderson. Anderson took careful aim, and shot Crawford in the head, killing him. Crawford was in fact unarmed.[2]

The district court provides a third, somewhat more general account of this incident. The court's description is styled as a background statement in its ruling on a motion to dismiss, rather than as findings of fact, and its evidentiary foundation is unclear. Nonetheless, we set out this account here for the sake of completeness:

> [W]hen the car came to a stop approximately nine police officers were on the scene. The officers surrounded the car with their guns drawn.... At this point, Anderson got out of his car, stood behind his car door and told the suspects to put their hands up. However, Richard Crawford, Jr. disobeyed Anderson's command and lowered his left hand. Anderson continued to caution and threaten Crawford of the consequences of not cooperating, but Crawford failed to raise both hands and follow the commands of the officer. Finally, Anderson shot Richard Crawford, Jr. once, hitting the right side of his head, killing him. Crawford was later determined to have been unarmed.

R. 196—195 (Order of Dec. 20, 1989).

We should also note that Reese's complaint alleges various acts and omissions on the part of Anderson, the police chief, and the city manager in support of her contention that the shooting resulted in part from a failure by supervisory personnel and the city to properly train and supervise officers in the use of deadly force.. The three individual defendants dispute the allegations and contentions in their affidavits.

*Proceedings Below*

Following the shooting, Crawford's mother, Irene Reese, sued Officer Anderson, Waco Police Chief Larry Scott, Waco City Manager John Harrison, and the City of Waco. She alleged violations of 42 U.S.C. § 1983 and various other federal and state constitutional and statutory provisions, and sought damages and injunctive relief.

Anderson moved to dismiss for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). He argued that Reese had not pled facts with sufficient particularity to overcome the individual defendants' qualified immunity, *see Jacquez v. Procunier*, 801 F.2d 789, 791–93 (5th Cir.1986) (enunciating heightened pleading requirement), nor alleged an actionable policy, custom, or practice under which the City could be held liable. The district court denied the motion.

Anderson then filed a similar motion for summary judgment under Rule 56, arguing that Reese had not adequately supported her claims with summary judgment evidence. Reese responded that Anderson was "attempt[ing] to try the case by 'Affidavits'," that the motion was "premature on the grounds that discovery has not been completed," and that the motion was a "rehash" of the earlier motion to dismiss.

The court agreed with Reese, and denied the motion with the following language:

> On December 20, 1989, this Court denied Defendants' Second Motion to Dismiss on essentially the same grounds upon which Defendants now request a summary judgment. In that Order, the Court found that Plaintiff's allegations are sufficient to overcome Officer Anderson's immunity defense, and that the suit against the City of Waco should not be dismissed for failure to state a policy. Defendants appear to have simply converted the original motion to dismiss to a motion for summary judgment by attaching three affidavits and changing the

---

**2.** Anderson does not contend otherwise; he simply does not address this question.

title.... Accordingly, IT IS ORDERED that Defendants' Motion for Summary Judgment is DENIED[.]

R. 460–459 (District Court Order of April 9, 1990).

## Jurisdiction

■ As a threshold matter, we must decide if this appeal is properly before us. Ordinarily, a district court's denial of summary judgment is an interlocutory order not appealable as of right. However, the Supreme Court has established a limited exception in cases where the denial defeats a claim of qualified immunity.[3] Accordingly, the appeal of the individual defendants is properly before us.

■ The city's appeal is not, however. As we have recently explained, municipalities do not have the right of interlocutory appeal under these circumstances. *See McKee v. City of Rockwall*, 877 F.2d 409, 412–13 (5th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 727, 107 L.Ed.2d 746 (1990). Accordingly, the City's appeal must be dismissed for want of appellate jurisdiction.

## Standard and Scope of Review

■ As we have noted, the district court denied summary judgment, reasoning that the summary judgment motion was essentially a rehash of the earlier motion to dismiss. As we explain below, this reasoning is flawed; no matter how similar the two motions may have appeared, the evidentiary burden on the non-movant in a summary judgment motion is significantly greater than in a motion to dismiss. As we show, the plaintiff did not meet her burden in this case.

In considering the district court's order, our review is *de novo;* that is, we apply the same standard that governs the district court. *See, e.g., Nieto v. San Perlita Indep. School Dist.*, 894 F.2d 174, 177 (5th Cir.1990). The core of this standard is the familiar phrasing of the summary judgment rule itself: the court should grant the motion if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## Genuine Issue of Material Fact

■ In determining whether there is any genuine issue of material fact, we are guided by the Supreme Court's holding in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324, 106 S.Ct. 2548, 2552, 2553, 91 L.Ed.2d 265 (1986):

> [A properly supported summary judgment motion] requires the nonmoving party to *go beyond the pleadings* and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate *"specific facts* showing that there is a genuine issue for trial."

*Id.* at 324, 106 S.Ct. at 2553 (emphasis added). *See also* Fed.R.Civ.P. 56(e).

The key teaching of *Celotex* is that the party responding to a summary judgment motion must support her response with specific, non-conclusory affidavits or other competent summary judgment evidence. It is in this respect that a summary judgment motion differs from a motion to dismiss, even if based on similar contentions. *See* 6 J. Moore & J. Wicker, *Moore's Federal Practice* para. 56.22[2] at 56–768—56–769 (2d ed. 1988).

---

3. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1182 (5th Cir.1990); *Johnson v. Odom*, 910 F.2d 1273, 1276 (5th Cir.1990).
The rationale behind this exception is that qualified immunity shields an official not just from liability but from suit itself; to permit the suit to proceed despite the district court's erroneous denial would defeat the official's qualified immunity. Although the district court's order is interlocutory, appellate jurisdiction is under 28 U.S.C. § 1291 (appeals from final decision), not § 1292 (appeals from interlocutory orders). *See Mitchell*, 472 U.S. at 530, 105 S.Ct. at 2817–18. The denial is deemed a final decision for purposes of § 1291. *Id.*

Measured against this standard, Reese's response to the defendants' summary judgment motion is sorely lacking. Reese submitted one piece of summary judgment evidence, an affidavit from a (non-passenger) eyewitness to the shooting. The substantive portion of the affidavit is as follows:

> The car that Mr. Crawford was riding in was totally surrounded by Waco Police Officers when Officer Anderson shot Mr. Crawford. Mr. Crawford did not pose a threat to Officer Anderson's life or to any of the other officers surrounding the car.

This affidavit amounts to virtually nothing. The first sentence, although factual, does not raise a genuine issue of material fact. Even assuming that Crawford's vehicle was totally surrounded, he could certainly have posed a threat to an officer's life were he permitted to retrieve and fire a concealed weapon. In other words, a reasonable jury, presented only with this evidence in Reese's favor, could not return a verdict in her favor. *See Bache v. American Tel. & Tel.*, 840 F.2d 283, 287 (5th Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)) (defining "genuine issue of material fact").

The second sentence quoted is not factual at all. It is simply an opinion—indeed, an opinion on the ultimate issue in this case. As such, it is a textbook example of conclusoriness. What is needed in an affidavit of this sort are facts, reasons, observations, and explanations—in a word, *evidence*—not sweeping conclusions. Instead, Reese has given us what amounts to merely a general denial. Such may suffice in the courts of Carroll's Wonderland,[4] but our rules are more exacting. At the summary judgment stage, we require *evidence*—not absolute proof, but not mere allegations either. *See Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir.1986).

Further, Reese offers no explanation for her failure. She could have submitted affidavits explaining the unavailability of summary judgment evidence, but she did not. *See* Fed.R.Civ.P. 56(f). Even her briefs to us and the court below offer no explanation for the absence of evidence.

■ Nor is this a case where the difficulty of presenting competent evidence is manifest. On the contrary, when the decedent was shot, he was sitting in a car with three other occupants, one of whom was his own brother. Further, the complaint in this case is detailed and precise. Accordingly, we fail to see why detailed affidavits should be unavailable. In short, we can discern no justification for Reese's failure.[5]

## Entitlement as a Matter of Law

Despite Reese's failures, we cannot grant summary judgment to the individual defendants unless they are "entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Taking the competent evidence [6] in a light most favorable to Reese,

---

4. In Wonderland, evidence is readily excluded on the basis of a general denial:

 [Mad Hatter:] "[T]he March Hare said—"
 "I didn't!" the March Hare interrupted in a great hurry.
 "You did!" said the Hatter.
 "I deny it!" said the March Hare.
 "He denies it," said the King: "leave out that part." *See* transcript, *R. v. Knave of Hearts* (unreported) (King of Hearts, J.), *reprinted in* L. Carroll, *Alice's Adventures in Wonderland* (1865), ch. 11.

5. Citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, Reese also argues that summary judgment is inappropriate because "adequate time for discovery" had not elapsed prior to defendants' filing their motion. However, Reese has failed to explain what discovery she did have, why it was inadequate, and what she expected to learn from further discovery. Nor does she cite authorities to support her claim that discovery was thus far inadequate. These failures, coupled with the factors enunciated in the text *supra,* render her argument unconvincing. In the context of a summary judgment motion, vague assertions of the need for additional discovery are as unavailing as vague responses on the merits. *See Union City Barge Line v. Union Carbide*, 823 F.2d 129, 136–37 (5th Cir.1987).

6. This evidence is, as we have stressed, the affidavits presented by Anderson and Reese. For the purposes of this section, we will also accept the district court's apparent finding that Crawford was "later determined to have been unarmed."

the non-movant, we now determine whether the individual defendants are entitled to summary judgment.

 Anderson directs our attention to a number of Texas authorities on self-defense and the use of force by and in the presence of police officers.[7] These do not form the framework for our analysis, however. As the Supreme Court has explained, a deadly force complaint under § 1983 is a federal constitutional claim, and is analyzed according to Fourth Amendment standards:

> *[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard....

*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in original).

 Guided by *Graham*, we have enunciated a three-part test for § 1983 excessive force claims; to prevail on such a claim, a plaintiff must show:

> (1) a significant injury, which
> (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was
> (3) objectively unreasonable.

*Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989) (en banc) (footnote omitted).

Applying this test, Crawford clearly suffered a significant injury. Further, his death "resulted directly and only from" the shooting. The question is whether the amount of force used was "clearly excessive" and "objectively unreasonable."

The Supreme Court has instructed us on the proper standard for this inquiry:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... [T]he "reasonableness"

inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Graham*, 109 S.Ct. at 1872.

 In answering this question, we consider the totality of the circumstances. *Id.* In particular, we examine whether "the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest." *Id.*

Discussing the case of a fleeing suspect, the Court has explained:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon ... deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11–12, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985).

Applying these standards, we must conclude that Anderson's shooting of Crawford was reasonable and not excessive. As described in Anderson's affidavit, the vehicle in which Crawford was sitting had just come to an abrupt stop after a high speed chase during which apparently-stolen objects had been tossed from the car. Anderson had his gun drawn and pointed at Crawford and the driver. Anderson ordered the vehicle's occupants to raise their hands. Clear communication was difficult because of the siren noise, a situation for which Anderson is not to blame; nonetheless, the vehicle occupants clearly understood Anderson's commands and initially complied. Then Crawford repeatedly reached down in defiance of Anderson's orders. At least twice, Crawford reached below Anderson's sight line. The second

---

**7.** The cited authorities are Tex.Penal Code Ann. §§ 9.31–9.33 (Vernon 1974 & Supp.1991), Tex. Crim.Proc.Code Ann. §§ 6.05–6.07 (Vernon 1977 & Supp.1991), and *Hughes v. State*, 719 S.W.2d 560 (Tex.Crim.App.1986).

time, Crawford tipped his shoulder and reached further down.

Under these circumstances, a reasonable officer could well fear for his safety and that of others nearby. He could reasonably believe that Crawford had retrieved a gun and was about to shoot. That is, an officer would have probable cause to believe that "the suspect pose[d] a threat of serious physical harm." *Garner*, 471 U.S. at 11, 105 S.Ct. at 1701. Anderson had repeatedly warned Crawford to raise his hands and was now faced with a situation in which another warning could (it appeared at the time) cost the life of Anderson or another officer. Under such circumstances, an officer is justified in using deadly force to defend himself and others around him. Accordingly, the individual defendants are entitled to summary judgment as a matter of law.

The fact that the vehicle was "totally surrounded" by police does not change matters; had Crawford in fact retrieved a gun from beneath his seat, he could have caused injury or death despite the presence of numerous police officers. Also irrelevant is the fact that Crawford was actually unarmed. Anderson did not and could not have known this. The sad truth is that Crawford's actions alone could cause a reasonable officer to fear imminent and serious physical harm.[8]

*Conclusion*

Since the individual defendants are entitled to summary judgment, we must reverse the district court's denial of their motion. In addition, since no federal claims remain against the individual defendants, we instruct the district court to dismiss the pendent state claims against those defendants as well, without prejudice to refiling those claims in state court.[9]

A case of this gravity demands the utmost care. Here, for reasons neither explained nor evident, there was a complete failure to provide the evidence required in response to a summary judgment motion. The rules in this regard are clear and well-established; we are without authority to waive them.

For the reasons stated above, we REVERSE the district court's denial of summary judgment for the individual defendants; DISMISS the appeal of the City of Waco; and REMAND for entry of summary judgment in favor of the individual defendants, dismissal without prejudice of pendent state claims against the individuals, and further proceedings consistent with this opinion.

---

**8.** The Supreme Court's decision in *Garner* is not to the contrary. There, the Court found unreasonable the shooting of an unarmed felony suspect, but the officer could see that the suspect's hands were empty and was "reasonably sure" he was unarmed; further, the suspect was fleeing, not reaching for an unknown object in repeated defiance of an order to raise his hands. *See* 471 U.S. at 1, 105 S.Ct. at 1694. In *Garner*, it was evident that the suspect posed "no immediate threat to the officer and no threat to others."

*Id.* at 11, 105 S.Ct. at 1701. Here, all signs were to the contrary.

**9.** Such dismissal is perhaps the practice in this circuit, *see, e.g., McKee,* 877 F.2d at 416; *Jacquez,* 801 F.2d at 793, although there is disagreement as to whether it is mandatory, *see McKee,* 877 F.2d at 426 (dissenting in part); *Mintz v. Barthelemy,* 722 F.Supp. 273, 282 & n. 16 (E.D. La.), *aff'd,* 891 F.2d 520 (5th Cir.1989).