Thomas F. WICKER, et al.

v.

CITY OF GALVESTON, et al.

Civil Action No. G–95–686.

United States District Court, S.D. Texas, Galveston Division.

Oct. 24, 1996.

the type of obligation at issue in this case is a corporate obligation, not a "personal" one.

Alton C. Todd, Alvin, TX, for plaintiffs.

John Edward Eckel, Mills, Shirley, Eckel & Bassett, Galveston, TX, for defendants.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

In this action, the Plaintiffs, Thomas Wicker and William Bradley Wicker, have alleged excessive use of force claims under 42 U.S.C. § 1983 against Defendants, Officer Henry Poretto and Officer Walter C. Braun. The Plaintiffs have also asserted state law tort claims against the Officers individually and against the City of Galveston. Now before the Court is the Defendants' Motion for Summary Judgment on grounds of qualified and official immunity, dated May 2, 1996. For the reasons set forth below, the Motion is hereby **GRANTED IN PART, AND DENIED IN PART.**

### I. FACTUAL BACKGROUND

On October 31, 1993, Plaintiffs Thomas and Brad Wicker were dove hunting in a field on Galveston Island. The City of Galveston Police Department dispatched police officers to the field after a complaint reporting that shots had been fired through a fence near a residence was called in by Marguerite Foreman, who lived in the vicinity of the field. Ms. Foreman reported that one shot had "whizzed by me" and that someone had pointed a laser sight in her direction.[1]

Officer Poretto responded to the call and arrived at the field first. While waiting for

---

1. Laser sighting devices are commonly used on rifles and are illegal devices for a hunting weapon.

backup, Poretto asserts that rather than entering the field, he used the public address speaker on his police car to identify himself as a police officer and to command anyone in the field to come out. Ms. Foreman corroborates that she could hear that "someone was speaking over a loudspeaker" into the field, but that she did not hear what was said. The Plaintiffs claim that they heard nothing at all. When Officer Braun arrived at the field five minutes later, Officers Poretto and Braun began a search of the field itself to see if they could locate suspects. Both officers wore clearly identifiable police uniforms and were armed.[2] The officers had armed themselves prior to entering the field because the report of shots fired had given them reason to believe that they would encounter someone with a weapon. As they searched the field, both officers testified that they were continuously shouting to identify themselves as police officers. Again, the Plaintiffs claim to have heard nothing.

During the officers' search of the field, Plaintiffs Thomas and Brad Wicker were stooped down in the tall grass out of sight. As the officers approached, Thomas Wicker stood up, aimed and fired his weapon in the direction of Officer Poretto. Brad Wicker confirms that his brother was the first to shoot, but that he also stood and fired while Thomas had stopped to reload. Both Thomas and Brad Wicker claim that they were shooting at doves and had not seen the police officers. Both Officer Poretto and Officer Braun testify that they saw Thomas point his weapon directly at Officer Poretto, not up in the air. In fact, Officer Poretto was hit in the face and chest by pellets, receiving minor injuries. Believing that they had been fired upon, both officers returned fire, each shooting once. Plaintiff Thomas Wicker was hit in the leg by buckshot.

The Plaintiffs filed this action asserting claims under 42 U.S.C. § 1983 and the Texas Tort Claims Act. The Plaintiffs contend the Officers used excessive force in violation of their rights under the Fourth and Fourteenth Amendments of the United States Constitution. The Officers now seek summary judgment on the state and federal claims asserted against them individually, contending the Plaintiff's federal claims are barred under the doctrine of qualified immunity and the state claims are barred under the parallel doctrine of official immunity. The City of Galveston also seeks summary judgment of the state claims asserted against it, contending that the City's sovereign immunity is not waived because the false imprisonment and assault are intentional torts.

## II. SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In the case now before the Court, many of the essential facts are not disputed. There was a 911 call reporting shots fired at a resident of the City of Galveston. The responding police officers were wearing clearly identifiable police uniforms and made announcements over a loudspeaker before entering the field. The Plaintiffs were stooped

---

**2.** Officer Poretto carried a shotgun and was wearing a regular police uniform. Officer Braun carried a 9mm Sig Sauer and wore a windbreaker with "PD" shoulder patches, a large "PO-LICE" printed on the pocket, a sewn on badge, and a large "POLICE" printed on the back of the jacket.

down in the tall grass of the field, out of sight of the officers. Without warning, Thomas Wicker stood, aimed and fired his weapon in the direction of Officer Poretto. Officer Poretto was hit in the face and chest by pellets, sustaining minor injuries. After Thomas had stopped to reload his shotgun, Brad Wicker also stood and fired his weapon. Believing that they had been fired upon, both officers immediately returned fire, each shooting once. Thomas Wicker sustained injuries when he was hit in the leg by buckshot.

The Plaintiffs have set forth peripheral factual disputes in support of their argument that there are genuine issues for trial, such as whether or not the Plaintiffs could hear the officers' announcements, whether or not the Plaintiffs had seen the officers, and whether or not the Plaintiffs thought they were shooting at doves. Yet, only disputes over facts that might affect the outcome of the lawsuit *under the governing law* will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Therefore, it is necessary to examine "the governing law" applicable to this case to determine whether the Plaintiffs have carried their burden.

### III. FEDERAL § 1983 CLAIMS

The question of whether qualified immunity will protect an official is one of law for the Court to decide. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 434–35 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994). Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could have reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions in light of clearly established law. *Id.* at 639, 107 S.Ct. at 3038. This objective standard not only allows many claims to be decided on summary judgment, but also provides defendant officials with the ability to anticipate when their conduct may give rise to liability for damages. *Melear v. Spears,* 862 F.2d 1177, 1183 (5th Cir.1989) (citing *Creighton,* 483 U.S. at 646, 107 S.Ct. at 3042). If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Cantu v. Rocha,* 77 F.3d 795, 806 (5th Cir.1996). Thus, even when a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Fraire v. City of Arlington,* 957 F.2d 1268, 1273 (5th Cir.1992), *cert. denied,* 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992).

When evaluating a claim of qualified immunity, the Court must first determine whether the plaintiffs' allegations state a claim for a violation of any rights secured under the Constitution. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992). In this case, there is no question that the Plaintiffs have alleged violations of their constitutional rights. "It is well settled that if a law enforcement officer uses excessive force in the course of making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated." *Harper v. Harris County,* 21 F.3d 597, 600 (5th Cir.1994). Because the Plaintiffs' complaint asserts violations of their constitutional rights, the Court must now determine whether the summary judgment evidence establishes that the Officers' conduct was objectively reasonable such that they are entitled to immunity. *Johnston v. City of Houston,* 14 F.3d 1056, 1060 (5th Cir.1994).

A deadly force complaint under § 1983 is analyzed according to Fourth Amendment standards. *See Stroik v. Ponseti,* 35 F.3d 155, 157 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995); *Reese v. Anderson,* 926 F.2d 494, 500 (5th Cir.1991). *"[A]ll* claims

that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in original). Therefore, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396, 109 S.Ct. at 1872. The calculus of reasonableness must include allowances for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396–97, 109 S.Ct. at 1872. Thus, the question is whether Officer Poretto's and Officer Braun's use of force was objectively reasonable in light of the facts and circumstances confronting them in the field on October 31, 1993. *Id.* at 397, 109 S.Ct. at 1872. In answering that question, the Court considers the totality of the circumstances, paying particular attention to "whether the suspect pose[d] an immediate threat to the safety of the officers or others." *Id.* at 396, 109 S.Ct. at 1872 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985)).

■ Applying these standards, the Court concludes that the Officers' use of force in the shooting of Thomas Wicker was objectively reasonable and that the Plaintiffs' § 1983 claims border on the frivolous. There is no factual dispute as to the facts relevant to this issue. It is undisputed that Ms. Foreman placed a 911 call reporting that shots had been fired into her property, one shot "whizzing" near her person. It is also undisputed that Ms. Foreman reported that a laser sight had been pointed in her direction. Furthermore, Officer Poretto's testimony that he made announcements over a loudspeaker into the field is corroborated by Ms. Foreman, a third party witness with no stake in this lawsuit. The fact that the officers

were wearing clearly identifiable police uniforms is also uncontested. Most importantly, the Plaintiffs *themselves* testify that Thomas Wicker rose from a stooped position out of tall grass to fire his weapon without warning in the direction of Officer Poretto, hitting Officer Poretto in the face and chest with birdshot. All parties agree that Thomas Wicker fired first, with Brad Wicker, Officer Poretto and Officer Braun firing simultaneously immediately thereafter.

The factual disputes that Plaintiffs' point to in support of their argument that there are genuine issues for trial are frankly irrelevant to judging the reasonableness of a particular use of force from the perspective of the reasonable officer on the scene. The fact that the Plaintiffs were not, in fact, carrying a rifle equipped with a laser sight, as Ms. Foreman reported, is immaterial to the Officers' perception of the immediate threat to their safety in the field that day.[3] Likewise, Plaintiffs' claims that they were not aware of the Officers' presence, that they did not hear the Officers' announcements have no bearing whatsoever on the reasonable officer's perception of the situation. The Plaintiffs' perception may have been that they were firing at doves, but the Plaintiffs' perception is not relevant here.

Thus, because there are no genuine issues of fact material to the Court's qualified immunity determination, the Court concludes that the Officers are shielded from liability by the doctrine of qualified immunity. It is plain that the Officers' actions were objectively reasonable in view of the facts and circumstances confronting them. As noted above, police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation. The Officers in this case faced a suspect who came into view suddenly, pointed a weapon directly at a uniformed police officer and fired. Several courts have recognized that an officer in such a situation could reasonably conclude that the suspect posed a threat of serious harm. *See, e.g., Stroik v. Ponseti*, 35 F.3d

---

**3.** Thomas Wicker actually carried a 20–gauge shotgun loaded with No. 8 shot. Brad Wicker carried a 12 gauge shotgun also loaded with birdshot.

155, 159 (5th Cir.1994).[4] The fact that Officer Poretto received only minor injuries from birdshot pellets does not change the fact that a reasonable officer would have probable cause to believe that "the suspect pose[d] a threat of serious physical harm." *Garner,* 471 U.S. at 11, 105 S.Ct. at 1701. In this case, the Officers could reasonably conclude, under the totality of the circumstances, that anything less than an immediate response could cost them their lives. Under such circumstances, an officer is justified in using deadly force to defend himself and others around him. *Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir.1991); *see also Stroik,* 35 F.3d at 158–59.[5] Accordingly, the Officers' Motion for Summary Judgment against the Plaintiffs' § 1983 claims is hereby **GRANTED.**

## IV. STATE LAW CLAIMS

The Defendants also seek summary judgment against the Plaintiffs' state law claims of false imprisonment, assault and punitive damages. Having denied all of the Plaintiffs' federal claims, this Court has supplemental jurisdiction to decide the remaining state law claims that are a part of the same case or controversy. 28 U.S.C. § 1367(a). Under § 1367, however, a federal court may decline to exercise its supplemental jurisdiction when it has dismissed all the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Trial courts are granted wide discretion to remand the remaining state law claims. 28 U.S.C. § 1367 Practice Commentary (West.Supp.1996).

■ Evaluating first the Plaintiffs' claims against the City of Galveston, the Court concludes that several of the Plaintiffs' claims may be dismissed as a matter of law. Under the Texas Tort Claims Act, a governmental unit in the state is liable for "personal injury ... caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1996). However, the Texas Tort Claims Act explicitly does *not* apply to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." TEX. CIV.PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1996). Therefore, because the City of Galveston has not waived its sovereign immunity, the Plaintiffs' claims against the City alleging assault and false imprisonment must fail as a matter of law. Furthermore, as the Texas Tort Claims Act does not authorize punitive damages, those claims also must fail as a matter of law. TEX.CIV.PRAC. & REM.CODE ANN. § 101.024 (Vernon 1996). Accordingly, the City' Motion for Summary Judgment against the Plaintiffs' assault, false imprisonment and punitive damages claims is hereby **GRANTED.**

■ The Court further concludes that the Plaintiffs' false imprisonment claims against the individual Defendants, Officer Poretto and Officer Braun, may also be dismissed as a matter of law. Under Texas law, the essential elements of a cause of action for false imprisonment are: willful detention, without consent, and without authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985). The plaintiff must prove the absence of authority in order to establish the third element of a false imprisonment cause of action. *Id.* at 376.

■ The Officers in this case were clearly acting within the authority of law in the seizure of the Plaintiffs. As a general rule, police officers must obtain an arrest warrant before taking a person into custody. *See Dejarnette v. Texas,* 732 S.W.2d 346, 349 (Tex.Crim.App.1987). However, police offi-

---

4. In *Stroik,* the Fifth Circuit found that where the suspect actually did have a gun and pointed it at the officer, the officer's life was actually in jeopardy when he shot. Given these facts, the officer could reasonably conclude that the suspect posed a threat of serious harm. *Compare Reese v. Anderson,* 926 F.2d 494 (5th Cir.1991), *infra* note 5.

5. In *Reese,* the Fifth Circuit held that a police officer's use of deadly force was reasonable when suspect repeatedly reached down out of officer's line of sight, in defiance of police officer's orders to raise his hands. The Circuit determined that the officer could reasonably believe the suspect had retrieved a gun and was about to shoot. The fact that the suspect was actually unarmed was irrelevant because the police officer had no way of knowing this. *Id.*

cers may arrest a person without a warrant if there is probable cause with respect to that person and the arrest falls within one of the statutory exceptions to the warrant requirement. *Rosalez v. Texas*, 875 S.W.2d 705, 718 (Tex.App.—Dallas 1993), writ ref'd. One statutory exception to the warrant requirement under the Texas Code of Criminal Procedure provides that "a peace officer may arrest an offender without a warrant for any offense committed within his presence or within his view." TEX.CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1996).

 The "totality of the circumstances" test applies in Texas for determining whether probable cause exists for a warrantless arrest. *See Amores v. Texas*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991). Probable cause exists if, at the moment of arrest, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution to believe a particular person had committed or was committing an offense. *See Id.* To determine whether probable cause exists, the Court must look to the objective facts known to the officer at the time of the arrest. *Rosalez*, 875 S.W.2d at 719.

 In the instant case, the Court again observes that it is undisputed that Plaintiff Thomas Wicker stood and fired his weapon in the direction of Officer Poretto. It is also undisputed that Officer Poretto received minor injuries to the face and chest as a result. Under the Texas Penal Code, those actions seem to fall within the definition of aggravated assault.[6] Combined with other objective facts known to the Officers at the time of the shooting, such as the 911 call reporting shots fired and a possible laser sighting device, the shot fired by Thomas Wicker gave the Officers probable cause to believe that an offense had been committed within their view. Under those circumstances, the Texas Code of Criminal Procedure grants an officer the authority to make an arrest without a warrant. Therefore, the Plaintiffs cannot prove the

absence of authority necessary to establish a claim of false imprisonment and those claims against the Defendant Officers individually are dismissed as a matter of law. Accordingly, the Officers' Motion for Summary Judgment against the Plaintiffs' claims of false imprisonment is hereby **GRANTED**.

 The Court also finds that the Plaintiffs' claims for punitive damages against the Defendant Officers must fail. Under Texas law, punitive damages are levied against a defendant to punish the defendant for outrageous, malicious, or otherwise morally culpable conduct. *Transportation Insurance Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex1994); TEX.CIV.PRAC. & REM.CODE ANN. § 41.003(a) (Vernon Supp.1996). The legal justification for punitive damages is similar to that for criminal punishment: to punish wrongdoers. *Moriel*, 879 S.W.2d at 16. Gross negligence, to be the ground for punitive damages, means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of others. *Id.* at 20. However, an act that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent. "Only if the defendant's act or omission is *unjustifiable* and likely to cause serious harm can it be grossly negligent." *Id.* at 22 (citations omitted) (emphasis added).

 Under the Texas Penal Code, a peace officer is justified in using deadly force when the peace officer reasonably believes that the deadly force is necessary to make an arrest if (1) the officer reasonably believes the conduct for which the arrest is authorized included the use or attempted use of deadly force; or (2) the officer reasonably believes there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the officer or another if the arrest is delayed. TEX.PENAL CODE ANN. § 9.51(c) (Vernon 1996). On the facts of this case, it is clear to the Court that Officers Poretto and Braun could reasonably believe that deadly force was necessary to secure custody of the

---

**6.** TEX PENAL CODE ANN. § 22.02 (Vernon 1996) provides that: (a) A person commits an offense if the person commits assault as defined in Section 22.01 and the person ... (2) uses or exhibits a deadly weapon during the commission of the assault.

Plaintiffs. Again, it is undisputed that Thomas Wicker fired a shotgun in the direction of Officer Poretto, striking him in the face and chest with birdshot. Thus, under either provision of the Texas Penal Code discussed above, the Officers were justified in returning fire. Consequently, the Court concludes that the Officers' actions were not unjustifiable, and therefore, were not grossly negligent. As there are no disputed facts to support that the Officers acted with malice or gross negligence, the Plaintiffs' claims for punitive damages fail as a matter of law. Accordingly, the Officers' Motion for Summary Judgment against the Plaintiffs' claims of punitive damages is hereby **GRANTED.**

■ Finally, in spite of this Court's finding that the Plaintiffs' § 1983 claims are patently ridiculous based on this set of facts, and that many of the Plaintiffs' state law claims also clearly fail as a matter of law, this Court makes no finding on the merits of the Plaintiffs' assault claims against the Defendant Officers individually. There may be genuine issues of fact material to a determination of the Officers' liability on these claims. For example, the factual disputes that Plaintiffs have pointed out may, in fact, be relevant and material to a determination of the Plaintiffs' apprehension of a harmful contact. Therefore, this Court declines to reach the state law assault issue. The Court is mindful that Texas courts have a special expertise in applying state law. Accordingly, the Defendants' Motion for Summary Judgment as to the Plaintiffs' assault claims against the Defendant Officers individually is hereby **DENIED.**

## V. CONCLUSION

For the reasons stated above, Plaintiffs Thomas and Brad Wicker cannot recover against the Defendant Officers in this case under any of the federal claims pursuant to § 1983. Thus, the Defendants' Motion for Summary Judgment is hereby **GRANTED** as to all Plaintiffs' claims arising under federal statutes and all such claims are hereby **DISMISSED WITH PREJUDICE.** Furthermore, the Plaintiffs cannot recover against the Defendant Officers in this case under the state law claims of false imprisonment or punitive damages. The Defendants' Motion for Summary Judgment is hereby **GRANTED** as to those claims against the Defendant Officers and all such claims are hereby **DISMISSED WITH PREJUDICE.** The Court also finds that the Texas Tort Claims Act explicitly precludes Plaintiffs' recovery against the City of Galveston on the grounds of false imprisonment, assault and punitive damages. Thus, the Defendants' Motion for Summary Judgment is hereby **GRANTED** as to those claims against the City of Galveston and all such claims are hereby **DISMISSED WITH PREJUDICE.** The Court declines to exercise jurisdiction over the Plaintiffs' remaining state law causes of action, thus the Defendants' Motion for Summary Judgment as to those state law claims is hereby **DENIED.** The Court **REMANDS** the Plaintiffs' remaining state law claims of assault to the 10th District Court for Galveston County, from which it was removed.[7] All parties are **ORDERED** to bear their own costs incurred herein to date. Finally, the parties are **ORDERED** to file nothing further with this Court, including motions to reconsider and the like.[8] Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

---

7. To the extent that the Plaintiffs have also pled a negligence action against the City of Galveston under the Texas Tort Claims Act, the Court also **REMANDS** those claims to the Galveston County State Court. These claims were not addressed by the Defendants' Motion for Summary Judgment. However, such claims may involve genuine issues of material fact precluding judgment at this time.

8. Although the Court appreciates the cleverness of the Plaintiffs' attorney, the Court cautions the Plaintiffs against any future expansions of this case which would allow for a *third* removal to this Court. If this case is removed for a third time, this Court will examine *all* claims closely with the intent to dispose of the entire case summarily and with finality.