# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 28, 2018

No. 17-41235

Lyle W. Cayce
Clerk

CARMEN TREVINO, Individually, as Representative of the Estate of Jose Roman Rodriguez, Deceased and on Behalf of all those Entitled to Recover Under the Texas Wrongful Death Act for the death of Jose Roman Rodriguez; NOEMI LONGORIA, As Next Friend of Minor Children G.R.R. and G.N.R,

     Plaintiffs - Appellees

v.

ROLAND TRUJILLO, JR.,

     Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:16-CV-262

Before KING, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

On July 17, 2015, Defendant-Appellant Rolando Trujillo, Jr. fatally shot Jose Roman Rodriguez during a traffic stop. Plaintiffs Carmen Trevino and Noemi Longoria sued Trujillo under 42 U.S.C. § 1983 for excessive use of force. Trujillo moved for summary judgment on qualified immunity grounds. The district court denied Trujillo's motion as to qualified immunity, holding that

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-41235

genuine disputes of material fact over what happened at the traffic stop precluded summary judgment. Trujillo now appeals the district court's decision. For the reasons set forth below, we DISMISS Trujillo's appeal.

## I. Background

Early in the morning on July 17, 2015, Trujillo, a Brownsville Police Officer, responded to a reported shoplifting at a 7-Eleven store in Brownsville. The store clerk informed Trujillo that a man had taken three cases of beer without paying for them. Trujillo never asked the clerk if the suspect was armed. The clerk explained that the thief had absconded with another person in a gray-brown SUV. Trujillo then set off to catch the SUV.

Trujillo eventually caught up to the SUV at a red light. When the light turned green, Trujillo turned on his patrol car's siren and lights. The SUV turned left and continued at a moderate speed for several hundred yards before stopping. Trujillo then approached the SUV. As he approached the car, a passenger matching the description of the 7-Eleven thief bolted from the passenger side of the car into an adjacent field. Trujillo reported the deserter on his radio and continued to the driver, pulling open the driver's side door. According to Trujillo, Rodriguez, the driver, denied any knowledge of the 7-Eleven theft.

The district court determined that genuine factual disputes existed over what happened next. Although the dash camera in Trujillo's car captured the events, the district court concluded that the video could potentially support either party's version of the events.

Trujillo, for his part, asserts that Rodriguez shut the door and reached into the center console to retrieve a "dull gray object." He claims that Rodriguez's apparent attempt to grab a weapon prompted him to draw his gun

2

and fire four times into the car.  Trujillo states that as he fired the second or third shot, Rodriguez put the car in drive and began to drive away.

Plaintiffs disagree.  They argue that, under Trujillo's version of the facts, Rodriguez would have had to close the door, shift the car into neutral, rev the engine, use his free hand to open the console, reach for an unknown object, brandish that object, shift into drive, and again step on the accelerator—all in about one second.  Plaintiffs claim that Rodriguez reached only for the gearshift, that the dash camera video confirms that the car had begun moving when Trujillo first fired, and that forensic analysis showed that the fatal shots hit Rodriguez from behind.  The district court found that Trujillo never mentioned seeing a weapon at the time of the events in question.  Trujillo only mentioned the dull gray object six days later, after he met with counsel.  Trujillo also gave inconsistent testimony about touching a screwdriver that was found in the car, claiming both that he did not recall whether he had touched it and that he pulled it out of the center console and put it back.

The district court reviewed the dash camera video, but determined that "a jury could view the video and reasonably arrive at either conclusion."  It therefore concluded that a genuine issue of material fact existed regarding what prompted Trujillo to shoot Rodriguez.  The court thus denied Trujillo's motion for summary judgment based on qualified immunity.

## II. Standard of Review

The denial of a motion for summary judgment is ordinarily not an appealable final decision.  *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).  But when a party moves for summary judgment on qualified immunity grounds, that party may immediately appeal the district court's denial of summary judgment under the collateral order doctrine.  *Mitchell v.*

*Forsyth,* 472 U.S. 511, 524–25, 530 (1985).  Such an appeal is limited to purely legal issues.  *See id.* at 528 n.9, 530.

In this context, we cannot evaluate the district court's finding that genuine factual disputes exist.  *See Kinney*, 367 F.3d at 348.  Rather, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported."  *Id.* (citing *Behrens v. Pelletier,* 516 U.S. 299, 313 (1996), and *Johnson v. Jones,* 515 U.S. 304, 313 (1995)).  Put differently, "we can review the *materiality* of any factual disputes, but not their *genuineness.*"  *Kinney,* 367 F.3d at 347 (quoting *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000)).[1]

We also "are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and alteration omitted).  As a result, "on interlocutory appeal the public official must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal."  *Gonzales v. Dall. Cty.*, 249 F.3d 406, 411 (5th Cir. 2001).  "Once we have narrowed the interlocutory appeal solely to issues of law, we review the district court's resolution of these issues de novo."  *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).

### III. Discussion

A public official is entitled to qualified immunity unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."

---

[1] Trujillo's appeal primarily concerns the sufficiency of Plaintiffs' evidence, which speaks to the genuineness, not the materiality, of the factual disputes.  His main contention is that Plaintiffs lack evidence that it was unreasonable for him to believe Rodriguez was reaching for a weapon.  We do not have jurisdiction at this stage of the proceedings to address the genuineness of the parties' factual disputes.  *See Kinney*, 367 F.3d at 348.  To the extent that Trujillo's arguments are materiality challenges, we address them here.

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Plaintiffs claim that Trujillo used excessive force against Rodriguez. Excessive force claims implicate the Fourth Amendment's prohibition on unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see* U.S. Const. amend. IV. The core question is whether the officer's use of force was "objectively reasonable," that is, reasonable "in light of the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation." *Graham*, 490 U.S. at 397. The reasonableness inquiry is a "factbound morass." *Harris*, 550 U.S. at 383.

The factual disputes over what happened in the moments leading to Rodriguez's death are material to the question of whether Trujillo's actions violated a constitutional right that was clearly established at the time of the events in question. *See id.*; *see also Ashcroft*, 563 U.S. at 735. Given the constraints on our review at this interlocutory stage, and viewing the facts in the light most favorable to Plaintiffs, Rodriguez was a suspect in a minor theft, had not tried to harm Trujillo, and was reaching only for the gearshift; nothing indicated he was armed or reaching for a weapon. A jury could thus find that Trujillo could not reasonably perceive an immediate threat.[2]   "[O]fficers are

---

[2] The dissenting opinion relies on three cases to conclude that qualified immunity is appropriate here. However, two of the decisions involved different procedural postures. They also involve facts suggesting an immediate threat that are not present in this case. In *Ontiveros v. City of Rosenberg*, which was an appeal of a final judgment, not an interlocutory appeal, police executed a "high risk" felony arrest warrant against an individual who was reportedly armed and potentially inebriated. 564 F.3d 379, 381 (5th Cir. 2009). After the defendant officer broke down the door to the dimly lit room where the suspect was hiding and repeatedly ordered the suspect to show his hands, the officer thought he saw the suspect reach into a boot for what the officer believed could be a weapon. *Id.* Only then did the officer fire. *Id. Reese v. Anderson* was an interlocutory appeal of a summary judgment denial where the plaintiffs offered essentially no evidence to support their position. Additionally, there the officer pursued a suspect in a high-speed car chase. 926 F.2d 494, 495–96 (5th Cir. 1991). After he was stopped, the suspect repeatedly disregarded instructions to raise his hands. *Id.* at 496. The officer used lethal force only after the decedent began to sit up after reaching

prohibited from using deadly force against a suspect where the officers reasonably perceive no immediate threat." *Cole v. Carson*, 905 F.3d 334, 344 (5th Cir. 2018). That is the precise factual issue found to be in genuine dispute here: did the officer reasonably perceive an immediate threat? Because the disputed facts are material, we lack jurisdiction over Trujillo's appeal. *See Lytle*, 560 F.3d at 408.

Appeal DISMISSED.

---

down into the car below the officer's line of sight, leading the officer to believe that he was reaching for a weapon. *Id.* The third case, *Manis v. Lawson,* involved much different facts. 585 F.3d 839, 842 (5th Cir. 2009). Manis was impaired, behaved erratically, and repeatedly disregarded the officers' instructions to raise his hands. Officer Trujillo points to no such facts. Unlike those cases, viewing the facts in the light most favorable to Plaintiffs here, a jury could find that Trujillo could not reasonably have perceived an immediate threat.

No. 17-41235

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

While the majority opinion correctly sets out the relevant facts, I do not agree that the fact dispute identified by the district court is material. I would reverse the district court's denial of summary judgment.

As the majority opinion observes, we must accept the district court's finding that genuine factual disputes exist. *Kinney v. Weaver*, 367 F.3d 337, 347–48 (5th Cir. 2004) (en banc). Our review on appeal is limited to assessing the materiality of those fact issues. *Id.* Here, the district court found that a genuine fact dispute exists as to what occurred in the few seconds before Trujillo shot Rodriguez: Trujillo contends that Rodriguez reached for an object in the center console, while Plaintiffs insist that Rodriguez reached only for the gearshift.[1] Thus, the parties do not dispute that Rodriguez was reaching for something—the heart of their disagreement is *what* he was reaching for. The district court determined that this fact issue was material to the qualified immunity inquiry and therefore precluded summary judgment, and the majority agrees. It is at this point that I depart from the majority's analysis.

The question on appeal is whether a reasonable officer under the totality of the circumstances could have believed that Rodriguez was reaching for a weapon and therefore reasonably perceived an immediate threat. In several prior cases, this court has found no material fact issue to preclude a finding of qualified immunity when the shooting officer could not see the suspect's hands and the suspect moved his hands while they were out of the officer's line of sight. *See, e.g.*, *Manis v. Lawson*, 585 F.3d 839, 842, 844–45 (5th Cir. 2009) (suspect ignored officers' instructions and reached under seat of vehicle); *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 381, 384 (5th Cir. 2009)

---

[1] Neither the district court nor the majority believes that the dash camera video provides a clear view of what Rodriguez was reaching for or the surrounding circumstances.

(suspect reached into boot in dimly lit mobile home); *Reese v. Anderson*, 926 F.2d 494, 496, 500–01 (5th Cir. 1991) (suspect in vehicle repeatedly lowered his hand behind car door and reached down). *Manis* also involved an interlocutory appeal from a denial of summary judgment, and the court there observed that while other factual disputes existed, whether the suspect had reached under the seat of his vehicle was the "*only* fact material to whether [the officer] was justified in using deadly force." 585 F.3d at 843–45. Because the parties did not dispute that the suspect reached for *something*, and because the suspect's reaching under the seat after disobeying officers' orders "led [the officer] to discharge his weapon," there were no disputed facts material to the plaintiffs' excessive force claim. *Id.* at 844–45.

Even viewing the facts of this case in the light most favorable to Plaintiffs, *Manis* dictates the outcome. Here, the district court found that while Trujillo was standing next to Rodriguez's vehicle and attempting to question him, Rodriguez "quickly grabbed and pulled the driver's side door closed." Even if, as Plaintiffs contend, Rodriguez was attempting to flee, this was an act of noncompliance with Trujillo's authority. Next, under Plaintiffs' version of the facts, Rodriguez reached down to shift the vehicle into drive. Thus, as in *Manis*, the parties do not dispute that Rodriguez reached for something after disregarding Trujillo's orders, and these facts led Trujillo to discharge his weapon. Accordingly, under *Manis* and our other prior decisions, the fact dispute regarding what Rodriguez was reaching for is not material to the summary judgment inquiry.

No. 17-41235

Trujillo could have reasonably believed Rodriguez was reaching for a weapon[2] and therefore reasonably perceived an immediate threat. Because I believe precedent compels that conclusion here, I must dissent.

---

[2] Trujillo also presented evidence that he was aware that a brown SUV similar to the one Rodriguez was driving had been involved in several previous aggravated robberies where the suspects had used a handgun. This fact further supports the conclusion that Trujillo could have reasonably believed Rodriguez was reaching for a weapon.