**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Cantu SANCHEZ,
Defendant–Appellant.**

**No. 89–50082.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1990.

Decided Sept. 20, 1990.

---

Nancy G. Kendall, Deputy Federal Public Defender, San Diego, Cal., for defendant-appellant.

Michael J. Dowd, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before FARRIS, BOOCHEVER and NOONAN, Circuit Judges.

BOOCHEVER, Circuit Judge:

### OVERVIEW

Sanchez appeals his conviction of assault on a federal officer with a deadly and dangerous weapon under 18 U.S.C. §§ 111 and 1114 (1982), claiming numerous errors in

the district court's instructions to the jury. He also challenges the district court's application of the Sentencing Guidelines. We AFFIRM.

### FACTS

A federal grand jury indicted Sanchez for assault on a federal officer with a deadly and dangerous weapon, in violation of 18 U.S.C. §§ 111 and 1114.[1] At trial, United States Border Patrol Agent Jaime Macias (Macias) testified that on August 21, 1988, he was on patrol near Andrade, California, in a marked Border Patrol Dodge Ram Charger. At about 8 p.m., Sanchez passed in a Toyota. Macias pulled out after him, activated his red and blue lights, and pursued Sanchez when the car failed to stop.

Sanchez spun out of control and became stuck on some railroad tracks. Macias testified that he then pulled over and got out of the Ram Charger, walked around to the front and identified himself as a Border Patrol Agent, yelling to Sanchez to get out of his car. Sanchez rocked the Toyota back and forth until it was free of the tracks, and then drove straight at Macias, who dove under the Ram Charger. Macias testified that he felt an impact and felt rocks and dirt hitting him in the back.

Sanchez circled the Ram Charger and drove off. Macias crawled out from under the car, radioed that he had been rammed, and resumed the chase. Sanchez began to drive in rapid circles or "doughnuts," again bumping the Ram Charger. When Sanchez's car stuck in the sand, Sanchez got out of the car. Macias got out of the Ram Charger, identified himself again, and ran toward Sanchez as Sanchez walked toward a nearby trailer inhabited by family members.

Macias testified that when he caught up with him, Sanchez said "I am no wetback" and hit Macias in the chest. Macias kicked Sanchez to the ground and handcuffed him

1. 18 U.S.C. § 111 (1982) provides:
Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.
Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

**1358**

as other agents and family members converged on the scene. Sanchez continued to yell and curse, and bit his wife when she attempted to calm him.

Sanchez also testified at trial. His version of the encounter with Macias was that after stalling on the railroad tracks, he immediately restarted his car and continued directly home. He claimed that Macias attacked him from behind as he got out of his car.

A jury found Sanchez guilty, and he was sentenced to fifty-seven months in custody with a consecutive three-year period of supervised release.

### ISSUES

#### A. JURY INSTRUCTIONS

 This court reviews jury instructions as a whole, to determine whether they are misleading or inadequate; the standard of review generally is abuse of discretion. *United States v. Spillone*, 879 F.2d 514, 525 (9th Cir.1989). When a formal, timely, and distinctly stated objection is not made, however, the court will review the challenged instruction for plain error. *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989). Plain error is found only in exceptional circumstances, when the error is highly prejudicial, affects substantial rights, and it is highly probable that it materially affected the verdict. *Id.* at 1102–03.

#### 1. *Conflicting Intent Instructions*

The district judge gave the following instructions on intent. The deadly weapon instruction was proposed by Sanchez, and stated:

> a deadly or dangerous weapon is any object which, as used or attempted to be used, may endanger the life or inflict great bodily harm to a person. If you find that the defendant used an automobile, *intending to endanger the life of or inflict great bodily harm upon another, then his car or automobile is a deadly weapon* for purposes of this statute, under which the defendant is charged.

(Emphasis added.) An instruction on the intent required under § 111, proposed by the government, followed shortly thereafter:

> It is not necessary for the government to prove or show that the defendant intended to injure the border patrol agent. *Intent to injure is not an element of the offense charged.*

(Emphasis added.) Sanchez argues that these instructions were "conflicting, confusing and misleading," because the first instruction told the jury that Sanchez had to intend to injure Macias to be guilty of using the car as a deadly weapon, while the second indicated that Sanchez did *not* have to intend to injure Macias to be guilty of assault on a federal officer.

Sanchez's counsel objected to the government's instruction on the intent required under § 111 on the grounds that "[i]t's not an element. It's not—we're not going to allege that because the agent is not injured. There is no evidence he was injured. There is nothing about that. I think it's confusing and unnecessary." Moments earlier, Sanchez's counsel had agreed that § 111 did not require a specific intent to injure. The objection does not specify that defense counsel saw a conflict in the intent required by the instructions. Because Sanchez's counsel failed to object properly by distinctly stating the grounds for the objection, we review the combination of the two instructions for plain error. *Kessi*, 868 F.2d at 1102.

 The government's instruction is correct under current Ninth Circuit law; no intent to injure is required for the offense of assaulting a federal officer. *United States v. Jim*, 865 F.2d 211, 214–15 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989). While § 111 provides for enhanced penalties when a deadly or dangerous weapon is used, it does not define deadly weapon. Courts interpreting § 111 have adopted the commonly accepted definition of a deadly or dangerous weapon as stated in the instructions: "any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a per-

son." *See United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir.1987) (per curiam) (automobile), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988); *United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir.1988) (mouth and teeth); *United States v. Bey*, 667 F.2d 7, 11 (5th Cir. Unit B 1982) (mop handle, not a dangerous weapon under the circumstances); *United States v. Loman*, 551 F.2d 164, 169 (7th Cir.) (walking stick), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977). That definition does not specify whether the defendant must intend to injure the victim. We note that the aggravated assault guideline under which Sanchez was sentenced requires the use of "a dangerous weapon with intent to do bodily harm (*i.e.*, not merely to frighten)." United States Sentencing Commission, *Guidelines Manual* § 2A2.2 (*Application Note* 1) (Oct. 15, 1987, and as amended through October 15, 1988) (hereinafter *Guidelines* ).[2]

■ We need not decide whether specific intent to injure is required to find that a defendant used an object, such as a car, as a deadly weapon in an assault on a federal officer. Even if the jury construed the instructions to require such an intent, no prejudice to Sanchez resulted. This interpretation of the instructions would have required the prosecution to show not only that Sanchez drove at and rammed Macias' vehicle, but also that he intended to inflict great bodily harm or death.[3]

The jury also could have believed that no specific intent to injure was required to find that the car was used as a deadly weapon when the underlying crime, assault on a federal officer, did not require an intent to injure. This alternative would have operated to Sanchez's disadvantage if his defense at trial had been that although he had driven his car towards Macias, at no time did he intend to use his car to injure Macias.

Sanchez, however, did not testify that he had driven at Macias inadvertently or merely to frighten him. Instead, he testified that he had never driven toward or rammed into the Ram Charger, and he introduced expert testimony to that effect. The pivotal issue was therefore not what Sanchez intended when he drove toward Macias, but whether he drove toward him at all. Thus the required intent was almost immaterial to the defense. The jury, by returning a guilty verdict, must have accepted Macias' description of the incident, and disbelieved Sanchez.

Because neither of the two possible interpretations of the instructions was highly prejudicial and likely to have materially affected the jury's verdict, there was no plain error. *See Kessi*, 868 F.2d at 1102–03.

### 2. *Retroactivity of Jim*

■ This court's decision that § 111 was a general intent crime, *Jim*, 865 F.2d at 214–15, was issued January 10, 1989, after Sanchez's trial in November of 1988. San-

---

**2.** The presentence report does not refer to Sanchez's specific intent to injure Macias. In sentencing Sanchez, however, the district court, while not explicitly referring to an intent to injure, clearly indicated a finding of such a specific intent by stating: "I think you were a man possessed that night. I think it's very fortunate that no one was killed out there on the desert. I think your actions are indefensible. I think, Mr. Sanchez, you have been a fellow who, all your life, has had a chip on your shoulder; and it really came to fruition that night."

**3.** Sanchez cites *United States v. Washington*, 819 F.2d 221 (9th Cir.1987). Washington was charged with an assault requiring specific intent. The district court instructed the jury on specific intent, but gave another instruction listing the elements of the offense, which omitted

any reference to intent in describing the offense. "Thereafter, the district court compounded its error, first instructing the jury that the assault charged required proof of specific intent," and then giving an instruction indicating that the assault involved was not a specific intent crime. *Id.* at 226. We reversed the conviction. *Id.*

Washington's counsel made timely and proper objections, *id.*, so that the confusing instructions were not subject to the stringent requirements of plain error. Further, the defective instructions in *Washington* led the jury to believe that only general intent was required to convict for what was actually a specific intent crime, thus prejudicing Washington's defense. As stated above, Sanchez's defense was not prejudiced by the conflicting instructions.

chez now argues that it was incorrect to instruct the jury that no specific intent was necessary because *Jim* should not apply retroactively to his case. Sanchez's counsel explicitly agreed that § 111 was a general intent crime, and concurred in the decision not to give a specific intent instruction. Because the defense concurred in the formation of instructions, the standard of review is plain error. *See United States v. Solis*, 841 F.2d 307, 309 (9th Cir.1988).

In *Jim*, this court held that § 111 required only general intent, despite decisions to the contrary in other circuits and some indications in earlier Ninth Circuit decisions that a specific intent to injure was an element. " 'The only issue would be whether a reasonable man would find that the defendant's actions should have put a federal officer in apprehension of bodily harm.' " *Jim*, 865 F.2d at 213 (quoting *United States v. Staggs*, 553 F.2d 1073, 1076 (7th Cir.1977)).

■ "Although not constitutionally required, retroactive application of judicial decisions is the rule not the exception." *United States v. Kane*, 876 F.2d 734, 735–36 (9th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 173, 107 L.Ed.2d 130 (1989). We need not decide whether *Jim* applies retroactively, however, because as discussed above, Sanchez's defense did not depend on his intent during the encounter with Macias. As a result, even if the decision in *Jim* that § 111 required only general intent does not apply retroactively to Sanchez, there was no plain error likely to have materially affected the jury's verdict.

### 3. *Unanimity Instructions*

The trial court instructed the jury on forcible resistance as well as assault with a deadly weapon, although the judge had indicated that he intended not to give a resistance instruction because it might confuse the jury. Sanchez contends that it was error not to give the jury a specific instruction that they must reach a unanimous verdict as to the specific assault that formed the basis for his conviction. He claims that under the instructions as given, it would have been possible for some mem-

bers of the jury to have convicted him for assault with a deadly weapon while believing only that he had forcibly resisted arrest.

■ Sanchez's counsel made no objection at trial to the lack of a specific unanimity instruction, and so the standard of review is plain error. *Kessi*, 868 F.2d at 1102. A specific unanimity instruction is required where different jurors may have convicted a defendant based on the existence of different facts due to the complexity of the evidence, a discrepancy between the evidence and the indictment, or some other factor creating a real possibility of juror confusion. *United States v. Feldman*, 853 F.2d 648, 653 (9th Cir.1988), *cert. denied*, 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989). Otherwise, a general instruction on the requirement of unanimity will suffice. *Id.*

■ The district judge gave general unanimity instructions. The evidence was not complex or confusing, and no other factor was likely to have confused the jury. Sanchez's claim presumes that the jury could have found that there were as many as three assaults: the first, when Sanchez drove at Macias and Macias dove under the Ram Charger; the second, when Sanchez was doing "doughnuts"; the third when, on foot, Sanchez struck Macias in the chest. Yet the testimony at trial, the government's case, and Sanchez's defense were focused squarely on the two alleged assaults with the vehicle. The instructions on assault with a deadly weapon informed the jury that they could not find Sanchez guilty for merely striking Macias. It is highly unlikely that one or more of the jurors voted to convict Sanchez based on a belief that the only assault Sanchez committed occurred during the scuffle with Macias. It was not plain error to give only general unanimity instructions.

### 4. *Lesser included offense*

■ Sanchez also claims that the jury should have been instructed on the lesser included offense of forcible assault (apparently, assault on a federal officer without a

deadly weapon). Because Sanchez's counsel never requested such an instruction, this court reviews the district court's failure to give one sua sponte for plain error. *United States v. Sommerstedt,* 752 F.2d 1494, 1498 (9th Cir.), *modified on other grounds,* 760 F.2d 999, *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985).

Sanchez relies on *United States v. Skeet,* 665 F.2d 983 (9th Cir.1982). Skeet fired two shots. One shot injured no one, and the other hit his brother. Skeet was found guilty of assault resulting in serious bodily harm. On appeal, Skeet argued that because the first shot resulted in no injury, and because his defense to the second shot was that it was accidental, the district court erroneously failed to instruct the jury on the elements of simple assault. *Id.* at 986–87. This court agreed, holding "[w]here under the facts of a case, as here, the jury could find a defendant guilty of either one of two assaults, the jury must be charged on the elements and definition of each." *Id.* at 987.[4]

In *Skeet,* both the charged assaults arguably satisfied only the elements of the lesser included offense, and the defense presented the issue of the nature of the assault to the jury. Of the possible three assaults in Sanchez's case, only the final altercation with Macias is limited to the elements of assault on a federal officer. The other incidents involved the use of the automobile, and Sanchez's defense to those two assaults was not that he had failed to use a car as a deadly weapon, that is, that he had committed only the lesser offense of assault, but that there was no assault at all. He claimed that he merely had proceeded on his way after stalling on the railroad tracks, with no charge at nor impact with the Ram Charger.

As we stated earlier, the testimony at trial and the focus of both the prosecution and the defense centered on Sanchez's use of the car, with expert testimony as to whether the car actually rammed the Border Patrol vehicle. It is not probable that the jury could have found Sanchez guilty of the first two assaults, while also believing that no car was used. Nor is it likely that the jury believed Sanchez had not driven the car at Macias at all, but proceeded to convict him because he had scuffled with Macias at the time of his arrest. The failure to give a lesser included offense instruction was not plain error.

## B. SENTENCING GUIDELINES

The district judge adopted the probation officer's recommendation of a fifty-seven month sentence, based on the following calculation under the Guidelines:

| | | |
|---|---|---|
| Guideline § 2A2.2(a) (Aggravated Assault) | Base Offense Level | 15 |
| Guideline § 2A2.2(b)(2)(B) (Dangerous Weapon) | Specific Offense Characteristic | +4 |
| Guideline § 3A1.2 (official victim) | Adjustment | +3 |
| *Total Offense Level* | | 22 |
| Criminal History Category | | III |
| Guideline Range | | 51–63 months |

Sanchez challenges several aspects of the application of the Sentencing Guidelines to his case. We review de novo the district court's legal interpretation of the guidelines, accepting its factual findings unless they are clearly erroneous. *United States v. Howard,* 894 F.2d 1085, 1087 (9th Cir.1990); 18 U.S.C. § 3742(e) (1988). ("The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses . . . and shall give due deference to the district court's application of the guidelines to the facts.").

### 1. *Sections 2A2.2 and 2A2.4*

The district court applied *Guidelines* § 2A2.2, "Aggravated Assault." Sanchez argues that the court should have applied § 2A2.4, "Obstructing or Impeding Officers," which provided for a three-level enhancement if the obstruction rose to a

---

**4.** *Skeet* does not specify what standard of review the court used, and it is unclear whether Skeet's counsel objected to the omission of the instructions on the lesser included offense. Because there is no discussion of the plain error standard, however, it seems likely the court employed a less stringent standard. *See Sommerstedt,* 752 F.2d at 1496 (trial court must instruct jury on defendant's theory of the case if evidence sufficiently supports the theory, and the theory is supported by law).

level of "striking, beating, or wounding." *Guidelines* § 2A2.4(b)(1). Giving due deference to the district court's application of the guidelines to the facts, the use of the aggravated assault guideline was proper. The guideline for obstructing officers provides a cross-reference: "If the defendant is convicted under 18 U.S.C. § 111 and the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." *Guidelines* § 2A2.4(c)(1). The aggravated assault section is a general guideline, defining assault as "a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (*i.e.*, not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony." *Guidelines* § 2A2.2 (*Application Note* 1). It applies to offenses under seven statutes, including § 111. *Guidelines* § 2A2.2 (*Commentary* at 2.6).

We defer to the district judge's determination that Sanchez's conduct fits into the category of aggravated assault. His conclusion is bolstered by a recent amendment to the guidelines, which deleted the "striking, beating, or wounding" language in § 2A2.4(b)(1) and inserted new language, so that the guideline now provides for a three-level enhancement "[i]f the conduct involved physical contact, or *if a dangerous weapon (including a firearm) was possessed and its use was threatened.*" *Guidelines* § 2A2.4(b)(1) (as amended effective Nov. 1, 1989) (emphasis added). The addition of the "dangerous weapon" language makes it clearer that § 2A2.4(b)(1) would apply when the use of a weapon was only *threatened.* When, as in Sanchez's case, the jury found that a dangerous weapon was actually used, the obstruction section would not apply.

Sanchez's attempt to recharacterize his actions as obstructing and impeding an officer is disingenuous, as at trial his counsel agreed to the elimination of instructions defining resisting, opposing, or impeding arrest. The district court did not err in applying the guideline for aggravated assault.

2. *Official victim adjustment*

 Sanchez next argues that his sentence should not have been adjusted upward three levels for involving an "official victim," because the aggravated assault guideline, *Guidelines* § 2A2.2, already incorporates that factor. *Guidelines* § 3A1.2, the official victim guideline, provides for a three-level upward adjustment when "the victim was any law-enforcement or corrections officer ... and the crime was motivated by such status." The commentary to § 3A1.2 states, "Do not apply this adjustment if the offense guideline specifically incorporates this factor."

Item 49 in United States Sentencing Commission Technical Assistance Service, *Questions Most Frequently Asked About the Sentencing Guidelines*, Nos. I & II at 17 (Nov. 30, 1988), specifically states that "[t]he offense level determined through application of § 2A2.2 does not include consideration of an official victim." Although "this informal statement of the Commission is not binding on this court," *United States v. Wright*, 891 F.2d 209, 211 (9th Cir.1989), it clearly indicates that the Sentencing Commission intended the official victim adjustment to apply when a defendant is convicted under § 111 and sentenced under *Guidelines* § 2A2.2. A subsequent clarifying amendment to *Guidelines* § 3A1.2 dispels any remaining doubt regarding the Commission's intent: "[t]he only offense guideline in Chapter Two, Part A, that specifically incorporates this factor is § 2A2.4 (Obstructing or Impeding Officers)." *Guidelines* § 3A1.2 (*Application Note* 3) (as amended effective Nov. 1, 1989).

Sanchez further argues that his case does not warrant application of the official victim adjustment because the evidence did not show that his assault was motivated by Macias' status as a federal officer, as required under *Guidelines* § 3A1.2. The district judge characterized the evidence differently:

I think you were a man possessed that night. I think it's very fortunate that no one was killed out there on the

desert.... You are lucky you weren't shot.

I think the officers acted very reasonably, and I think they were dealing with someone who was completely out of control.

I think you knew they were police officers. I think you knew they were law enforcement. I think you knew they were Border Patrolmen.

Giving "due regard to the opportunity of the district court to judge [Sanchez's] credibility" and "due deference to the district court's application of the guidelines to the facts," 18 U.S.C. § 3742(e), we uphold the district judge's determination that Sanchez knew Macias was a federal officer and that the assault was motivated by that knowledge.

### 3. *Deadly weapon adjustment*

■ The district court found a specific offense characteristic for use of a dangerous weapon, adjusting Sanchez's guideline range upward by four points under *Guidelines* § 2A2.2(b)(2)(B). Sanchez claims that his car was not a dangerous weapon. This is frivolous, given that the guidelines define a dangerous weapon as "an instrument *capable* of inflicting death or serious bodily injury." *Guidelines* § 1B1.1 (*Application Note* 1(d)) (emphasis added); *see Aceves–Rosales*, 832 F.2d at 1157 ("It is indisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon.").

Sanchez further asserts that if his car was a deadly weapon, he only "brandished" it, deserving only a three-point adjustment under § 2A2.2(b)(2)(C). Driving his car directly at Macias is more than merely "brandishing" it. This contention is without merit.

### 4. *Criminal history*

■ Sanchez received two criminal history points under § 4A1.1(d) for being on three years summary probation for driving under the influence of alcohol. He argues that while supervised probation merits criminal history points, unsupervised or summary probation does not. This argument fails. The guidelines make no distinction between the two types of probation, and "[t]he non-supervisory status of a sentence of probation does not exempt it from section 4A1.1(d)." *United States v. McCrudden*, 894 F.2d 338, 339 (9th Cir.) (per curiam), *cert. denied*, — U.S. —, 110 S.Ct. 1534, 108 L.Ed.2d 773 (1990).

### 5. *Fifty-seven month sentence*

Sanchez's final argument is that his sentence was greater than necessary, even if the calculation of the sentence under the guidelines was correct. The district judge accepted the presentence report's recommendation of a fifty-seven month sentence, in the middle of the guideline range of fifty-one to sixty-three months. At his sentencing hearing, Sanchez's counsel argued that the district court should depart downward, given his general background as a hard-working man who had overcome obstacles of learning disabilities and illiteracy to support a large family.

The district judge refused to depart downward. Although he expressed a general regret that the guidelines limited his discretion, he added "while the guidelines impose greater sentences than normally I would consider, I don't think they are unreasonable or inappropriate in this respect."

■ We have recently held that "a district court's discretionary decision not to depart downward from the guidelines is not subject to review on appeal." *United States v. Morales*, 898 F.2d 99, 103 (9th Cir.1990). The district judge in this case nowhere indicated that his refusal to depart from the guideline range was other than discretionary. If he believed that a specific guideline provision precluded him from departing on the bases urged by Sanchez's counsel, he certainly would not have imposed more than the minimum sentence under the guideline range, which would have been fifty-one months. In sentencing Sanchez to fifty-seven months, the district judge exercised his discretion, and we are

without jurisdiction to review his failure to depart downward.

AFFIRMED.