**Harold G. LABENSKY, Administrator of the Estate of Larry Labensky, Plaintiff,**

**v.**

**Christopher CORNWELL, Defendant.**

**Case No. 3:08–cv–429.**

United States District Court, S.D. Ohio, Western Division, at Dayton.

Sept. 1, 2010.

Bradley Dean Anderson, Rion, Rion & Rion, L.P.A., Inc., David D. Brannon, Brannon & Associates, Dwight Dean Brannon, Dayton, OH, for Plaintiff.

Neil Frank Freund, Leonard J. Bazelak, Freund Freeze & Arnold, Dayton, OH, for Defendant.

## ENTRY AND ORDER GRANTING DEFENDANT CHRISTOPHER CORNWELL'S MOTION FOR SUMMARY JUDGMENT (Doc. 18).

THOMAS M. ROSE, District Judge.

Pending before the Court is Defendant Christopher Cornwell's Motion for Summary Judgment. Doc. 18. This case arises out of a claim concerning the fatal shooting of Plaintiff Larry Labensky by Defendant Christopher Cornwell, a Police Officer for the City of Dayton. Because Plaintiff cannot show that it was unreasonable for Defendant to believe Plaintiff posed a physical threat to others, the Court will grant the motion for summary judgment.

## I. BACKGROUND

On May 5, 2008, an unidentified suspect robbed a BP gas station and a Rite Aid Drug Store in Dayton. *Walters Aff.* at ¶ 2. A clerk at the Rite Aid store reported to a Montgomery County Sheriff's deputy that the suspect had "gestured like he had a weapon." *Walters Aff.* at ¶ 3. Officer Cornwell, assisted by other Dayton police officers responded to the area of the search. *Cornwell Dep.* at 96.

After midnight on May 6, 2008, Deputy Joshua Walters observed a Pontiac Grand Am at a stop light in the vicinity where

officers had searched earlier. *Walters Aff.* at ¶ 9. Deputy Walters suspected that the driver of the Pontiac might have been the person who had committed the BP and Rite Aid robberies. *Walters Aff.* at ¶¶ 10–11. After Deputy Walters shined his spotlight on the driver of the vehicle, the driver of the car, later identified as Larry Labensky, drove away. *Walters Aff.* at ¶ 12. Deputy Walters pursued the vehicle. *Id.* During the pursuit, Labensky's vehicle left the roadway at the intersection of Salem Avenue and Grant Avenue, crashed into a house on Gotham Avenue, and halted his vehicle. *Walters Aff.* at ¶¶ 13–14. Walters then approached Labensky's vehicle with his firearm drawn and told him to show his hands. *Id.* at ¶ 13. The in-car video from Deputy Walters' cruiser shows that Labensky placed his vehicle in reverse, backed away from the house, and then put his car back into forward gear and drove off. *Walters Cruiser Video; Walters Aff.* at ¶ 20. Deputy Walters returned to his cruiser and resumed his pursuit. *Id.* at ¶ 16.

At approximately 12:30 a.m. on May 6, 2008, Officer Cornwell was on his way back to his District Headquarters, when Officer Cornwell overheard the radio calls of sheriff's deputies in pursuit of the Pontiac Grand Am. *Cornwell Dep.* at 111. Officer Cornwell decided to join the pursuit. *Cornwell Dep.* at 111–12.

At 12:41:18 a.m., Officer Cornwell first saw Labensky's vehicle approaching his cruiser. *Cornwell Dep.* at 193. At 12:41:26 a.m., Officer Cornwell saw Plaintiff crash into the backyard of a house at 4222 Williamson Avenue. *Cornwell Cruiser Video.* Officer Cornwell parked his car in front of the house. *Id.* Defendant Cornwell left his cruiser and ran up the driveway and to the back of the house where Labensky had crashed his vehicle. *Cornwell Dep.* at 121–22. Labensky's vehicle had crashed through a wooden privacy fence and chain-link fence at the rear of the 4222 Williamson property and entered the adjacent property behind it. *Id.* Labensky's vehicle made a right-hand turn and started going through that yard. *Id.* at 123. Cornwell lost sight of Labensky's vehicle until he jumped through a hole in the privacy fence and saw the silver Grand Am hit the fence on the right side of the yard. *Id.* at 123–23. Officer Cornwell heard the motor revving, but noticed that "the fence was stopping [Labensky]" because a shed or garage was on the other side of the fence. *Id.* at 155–56. Officer Cornwell continued to run toward the car until he was about ten feet from the driver's side door and between the driver's door and the driver's side backseat. *Id.* at 126. Officer Cornwell was holding his flashlight in his left hand, and his gun in his right hand. *Id.* at 130.

Officer Cornwell saw other officers follow through the hole in the fence and run toward Labensky's car. *Cornwell Dep.* at 132–33. Fearing for the safety of these officers, Cornwell yelled, "Stop, you're going to get shot" twice at Labensky. *Id.* at 195; *Cornwell Cruiser Video.* Labensky did not acknowledge either of Cornwell's orders. *Cornwell Dep.* at 136.

Instead of submitting to Cornwell's orders, Labensky took his right hand off the steering wheel and moved it toward the gear shift, causing Cornwell to fear for the safety of the Officers coming through the fence. *Cornwell Dep.* at 133. While Officer Cornwell could not see the gear shift from where he was standing, *Id.* at 149, and he did not see the backup lights turn on, *Id.* at 151–52, Cornwell stated that the car moved backwards a small distance. *Id.* at 135. Officer Cornwell shot Labensky five times, hitting him in the chest and side. *Cornwell Dep.* at 195–96; *Cornwell Cruiser Video.* Labensky died shortly thereafter.

Officer Cornwell claims that Labensky, after having been shot, moved the gear shift from reverse and back to drive, and drove the vehicle forward so that it again rested against the fence. *Id.* at 133. According to Larry Dehus, an expert accident reconstructionist, a driver cannot shift a Pontiac Grand Am from drive to reverse while the engine is revving; the driver must shift by depressing a button on the side of the gear shift while the engine is not revving. *Dehus Dep.* at 49–51. A police photo shows mud sprayed on the side of the vehicle behind the front wheels, which according to the accident reconstructionist may indicate that the tires had been spinning in a forward direction. *Dehus Dep.* at 191, *Doc. 25 Ex. 4.*

The administrator of Labensky's estate filed a Complaint on October 28, 2008 against Officer Christopher Cornwell asserting a single cause of action under the Fourth Amendment of the United States Constitution for excessive force pursuant to 42 U.S.C. § 1983. Cornwell has moved for summary judgment. Defendant's response and Plaintiff's reply render the matter ripe for decision.

## II. Standard of Review

Federal Rule of Civil Procedure 56 and associated case law establishes the standard of review applicable to motions for summary judgment. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

Alternatively, a court should deny summary judgment "[i]f there are any genuine issues that properly can be resolved only by a finder of fact because they may rea-sonably be resolved in favor of either party." *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, a court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits that it believes prove the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then rests upon the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505 (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright and Miller, *Federal Practice and Procedure* § 2726. Credibility determinations must be left to the fact-finder. *Id.*

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the Court is entitled to rely upon Rule 56 evidence specifically called to its attention by its parties.

### III. Analysis

#### A. Fourth Amendment Application in § 1983 Excessive Force cases

■ To establish a § 1983 claim against an individual or a municipality, the plaintiff must identify a right secured by the Constitution or laws of the United States and the deprivation of that right by a person acting under color of state law. *Flemister v. City of Detroit*, 358 Fed.Appx. 616, 619 (6th Cir.2009) (*citing West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). In this case, Plaintiff asserts that his right to be free from the use of excessive government force established in the Fourth Amendment and made applicable to the states by the Fourteenth Amendment has been violated.

■ When examining a claim for excessive force brought under 42 U.S.C. § 1983, the Court must analyze it under the "objective reasonableness" standard as articulated in *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding courts should analyze that excessive force claims against law enforcement officers in the course of a "seizure" of a free citizen under the Fourth Amendment "reasonableness" standard). The Supreme Court has established the baseline standard for excessive force as "a police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). "Only in rare instance[s] may an officer seize a suspect by use of deadly force." *Green v. Taylor*, 239 Fed.Appx. 952, 958 (6th Cir.2007) (*quoting Livermore v. Lubelan*, 476 F.3d 397, 404 (6th Cir.2007)).

■ The Fourth Amendment does not extend to cases where an officer is reasonable in his belief that a suspect poses a danger of serious harm to others. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.1992). Where the "officer has probable cause to believe that the suspect poses a threat of serious physical harm, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11, 105 S.Ct. 1694. "A criminal suspect 'has a right not to be shot unless he [is] perceived to pose a threat to the pursuing officers or to others during flight.'" *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir.2005) (quoting *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir.1988)). In determining whether a particular use of force was excessive, the Court must examine three factors: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Livermore v. Lubelan*, 476 F.3d 397, 404 (6th Cir.2007) (*citing Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Smoak v. Hall*, 460 F.3d at 783).

Given this non-exhaustive list of factors, "the ultimate question is 'whether the totality of the circumstances justifies

a particular sort of seizure.'" *St. John v. Hickey,* 411 F.3d 762, 771 (6th Cir.2005) (*quoting Graham,* 490 U.S. at 396, 109 S.Ct. 1865); *Garner,* 471 U.S. at 8–9, 105 S.Ct. 1694. This inquiry by the Court into whether the government agent used excessive force "is one in which the result depends very much on the facts of each case." *Brosseau v. Haugen,* 543 U.S. 194, 200, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

■ To use force, actual danger need not threaten the officer or other officers; an officer need only have a reasonable perception of danger. *Freland,* 954 F.2d at 347 (*citing Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir.1991)); *see also Marion v. City of Corydon, Indiana,* 559 F.3d 700 (7th Cir.2009) (holding that summary judgment was proper in favor of officer who shot fleeing suspect, despite suspect's car being temporarily stopped due to a loss of traction). In *Freland,* an officer engaged in a pursuit of a suspect that reached speeds of 90 m.p.h. in residential areas. After this short but high-speed chase, the suspect pulled into a dead end street, turned his vehicle around in a lawn, then sped forward and crashed into the officer's vehicle. As the vehicle drove past, the officer fired one shot, killing the driver. Although the Court found that the officer was no longer in imminent danger at the time he fired his weapon, the Court held that believing that the suspect posed a danger of serious harm to others was reasonable for him. *Id.* at 348.

■ An officer need not see a weapon to presume that a suspect may be reaching for or attempting to use a weapon. *Dudley v. Eden,* 260 F.3d 722 (6th Cir.2001); *Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir.1991). In *Dudley,* the plaintiff robbed a bank without displaying any weapons, then drove to a parking lot and awaited police. When the police arrived and attempted to arrest him, the plaintiff fled in a vehicle, with the police in pursuit. Upon being cut off and stopped, the officer who had cut him off shot the plaintiff. In making their determination, the court found that "given Dudley's bank robbery, his refusal to comply with the commands of armed [police officers], his attempt to evade arrest, and his reckless driving, it was reasonable for Officer Eden to conclude that Dudley posed a serious threat to himself and others." *Id.* at 727. Similar facts existed in *Reese,* where a police officer stopped a car after a high-speed chase. *Anderson,* 926 F.2d 494. He ordered those inside the car to raise their hands, but one suspect reached below the officer's sight line. The officer shot and killed the suspect. The Fifth Circuit rejected plaintiff's argument that there was not a reasonable perception of danger, holding that the officer could reasonably have believed that the suspect had retrieved a gun. *Id.* The Fifth Circuit considered the absence of a gun to be "irrelevant," because all that matters is whether an officer has a reasonable belief a dangerous weapon is in the possession of a suspect and that the suspect may use it. *Id.*

Particularly relevant is *Smith v. Freland,* 954 F.2d 343, 348 (6th Cir.1992), in which the Sixth Circuit found an officer had reasonable justification to use deadly force on a suspect because he believed that failure to do so could have lead to a chain of events that would have posed a danger to others, even if the danger was not imminent or definite. *Freland,* 954 F.2d at 347–48; *see also Williams v. City of Grosse Pointe Park,* 496 F.3d 482 (6th Cir.2007) (holding that summary judgment was proper where defendant's flight from police in a car posed a threat to the public driving on the streets such that shooting and killing him was permissible); *see also Scott v. Clay County,* 205 F.3d 867 (6th Cir.2000) (holding that officer's firing at a fleeing vehicle that he believed posed a

threat to lives of those driving on the road was reasonable). In *Freland,* after a dramatic car chase, the police officer trapped the suspect at the end of a dark street. As the suspect freed his car and began speeding down the street, the police officer shot and killed him. The Sixth Circuit reasoned:

> In an instant Officer Schulcz had to decide whether to allow his suspect to escape. He decided to stop him, and no rational jury could say he acted unreasonably. Even if there were a roadblock at the end of Woodbine Avenue, Officer Schulcz could reasonably believe that Mr. Smith could escape the roadblock, as he had escaped several times previously. In any event, Mr. Smith had freed his car from Officer Schulcz's attempted blockade, and was undoubtedly going to escape from Officer Schulcz, if not the entire police force. Had he proceeded unmolested down Woodbine Avenue, he posed a major threat to the officers manning the roadblock. Even unarmed, he was not harmless; a car can be a deadly weapon. *See, e.g., United States v. Sanchez,* 914 F.2d 1355 (9th Cir.1990). Finally, rather than confronting the roadblock, he could have stopped his car and entered one of the neighboring houses, hoping to take hostages. Mr. Smith had proven he would do almost anything to avoid capture; Officer Schulcz could certainly assume he would not stop at threatening others.

*Freland,* 954 F.2d at 347.

**B. Qualified Immunity**

 Cornwell asserts that qualified immunity protects him from being liable to Labensky. Qualified Immunity shields a government official from liability for civil damages. When qualified immunity is invoked, unless a defendant's conduct violates clearly established statutory or constitutional rights of which a "reasonable person would have known," courts shall not require him to stand trial or face other burdens of litigation. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Schreiber v. Moe,* 596 F.3d 323, 329 (6th Cir.2010). The burden is on the plaintiff to show that the official is not entitled to qualified immunity. *Smoak v. Hall,* 460 F.3d 768, 777 (6th Cir.2006); *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir.2006).

 A plaintiff must establish the right allegedly violated to the extent that a reasonable person in the position of the defendant would have clearly understood that he had a duty to refrain from the conduct as issue. *Washington v. Newsom,* 977 F.2d 991, 992 (6th Cir.1992). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *see also Edwards v. Gilbert,* 867 F.2d 1271, 1277 (11th Cir. 1989) ("The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases."). Qualified immunity applies to mistakes of law, mistakes of fact, and mistakes based on mixed questions of law and fact. *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)); *Chappell v. City of Cleveland,* 585 F.3d 901, 907 (6th Cir.2009) (*citing Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)).

 Courts should resolve issues of immunity at the earliest possible stage in a case. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)

(*citing Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). While no longer required, courts are encouraged to employ the *Saucier* test by addressing first whether or not a government official violated a right, and then second whether the Constitution clearly established it to the extent a reasonable person would have been on notice as to his duty not to violate the right. *Callahan,* 129 S.Ct. at 815. "There will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law . . . ." *Callahan,* 129 S.Ct. at 820.

 Therefore, in the instant case, Plaintiff must show that a genuine issue of fact exists with respect to whether the police officer reasonably believed decedent posed a serious threat, such that the shooting was reasonable given the totality of the circumstances. When "there is some evidence—more than a mere scintilla of evidence—that [decedent], through his conduct, judged from the perspective of reasonable officers on the scene, did not give the officers probable cause to believe that he posed a serious threat of harm, a genuine fact dispute is created." *Chappell,* 585 F.3d at 909. For a case to survive summary judgment, it must contain two sets of facts in conflict with each another, not merely evidence that may cast doubt on one set of facts. *Chappell,* 585 F.3d at 915 (granting summary judgment due to the officer's testimony being uncontested due to the victim being dead and unable to offer contrary testimony, and only circumstantial evidence offered by plaintiff.); *Yates v. City of Cleveland,* 941 F.2d 444 (6th Cir.1991). The *Chappell* court made it clear that a party needs to do more than present evidence casting

doubt on another party's testimony; a plaintiff can only overcome qualified immunity and create an issue for the jury to resolve if he presents a second, obviously conflicting versions of the facts. *Chappell,* 585 F.3d at 915.

### C. Plaintiff's Fourth Amendment Right Was Not Violated

Turning toward the instant case, of the three explicit factors for determining whether lethal force is justified, the first and third factors are undisputed. Neither party disputes the fact that the officers were pursuing a suspected felon. *Doc. 18* at 3–4; *Doc. 25* at 2–3. Neither party disputes the fact that the decedent was actively attempting to evade arrest by flight, even up to the moment he was shot. *Doc. 18* at 6; *Doc. 25* at 4–5. The second *Graham* factor and the only disputed factor relevant here is whether the officer reasonably believed that the decedent posed an immediate threat to the safety of the officers or others. Defendant argues that because the car began moving backwards toward other officers who were approaching from behind, his use of force was justified. *Cornwell Dep.* at 152–53; *Doc. 18* at 12. Plaintiff counters that decedent could not have shifted his vehicle into reverse and, as such, posed no immediate threat to the officers. *Doc. 25* at 6. Plaintiff has produced several experts, who concluded that was there no evidence suggesting that the vehicle had attempted to move backwards,[1] and that putting the car in reverse was impossible if the engine was running. *Dehus Dep.* at 80–81; *Doc. 13 Ex. 2* at 1. Because the Court must take all inferences in the light most favorable to the Plaintiff, for the purposes of summary

---

1. Plaintiff misrepresents the statements quoted in the Dehus Deposition. Plaintiff states that the evidence shows that "decedent's vehicle was not moving backward at any point."

The actual testimony is that "none of the photographs demonstrate any evidence that the car was in reverse."

judgment, the Court assumes decedent never put the vehicle in reverse.

Assuming decedent did not put the car in reverse, the Court must nonetheless examine the reasonableness of the situation "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Plaintiff erroneously relies on *Green* in his assertion that Defendant acted unreasonably in his application of force. While the facts may seem similar at first glance, the outcome rests on several factors for which the situations differ.

In *Green,* a pursuit was initiated because the car was listed in the police database as being connected with a crime. While the suspect did commit several traffic violations during the pursuit, the officers had no reason to believe that the suspects had committed any felonies. *Green,* 239 Fed.Appx. at 958. The current case, however, involves the pursuit of a suspect in multiple armed robberies who fled from the police after being stopped once and who crashed into a house and through yards and fences. *Cornwell Dep.* at 115, *Walters Cruiser Video, Walters Aff.* at ¶ 14. More importantly, in *Green,* because there was direct evidence in support of the proposition that the vehicle had stopped and the suspects had surrendered, the court found that "if the vehicle came to a complete stop ... *and* if the suspects put their hands in the air or on the steering wheel" the officers would have no probable cause to believe the use of deadly force was necessary. *Green,* 239 Fed.Appx. at 958 (emphasis added). In short, all three factors articulated in *Graham* differ from the current case.

 Plaintiff has not produced any evidence which directly contradicts Cornwell's testimony that he "saw his right hand move from the steering wheel down" and believed that "the vehicle and driver posed an immediate threat." *Cornwell Dep.* at 146, 152. As in the discussion above, it is not enough in the Sixth Circuit for a party to cast circumstantial doubt on one set of facts. A party must present direct evidence such as witness testimony that creates two distinct sets of facts. Plaintiff's experts do not contradict the reasonableness of Defendant's interpretation of the potential danger. This case does not therefore have a genuine issue of material fact with respect to Plaintiff's argument that a police officer would not have a reasonable basis for believing there would be imminent harm to the other officers or others.

Plaintiff's insistence on the importance of the stuck tires, and the impossibility of the decedent shifting the vehicle into reverse has little bearing on the primary inquiry: Was Defendant reasonable in believing that decedent posed a serious threat? Assuming everything Plaintiff claims is factually true, it is only through hindsight that Defendant's actions can appear unreasonable. Given the totality of the circumstances, including the failure of decedent to comply with the commands of police officers who reasonably suspected him to be a felon, the recklessness of decedent in his repeated attempts to escape, and the officer's reasonable belief that decedent was imminently putting other officers' lives in danger, Defendant did not violate decedent's Fourth Amendment right through use of deadly force. Having led police on a chase, having once resumed that chase after crashing, and having crashed again, Plaintiff needed to keep his hands on the driver's wheel, or raise them in the air. See *Smith v. Freland,* 954 F.2d 343 (6th Cir.1992). Instead, Plaintiff chose a different course of action, which was reasonably perceived as a threat to others.

Finally, as regards qualified immunity, with regard to the second element of the

*Saucier* test, which does not require a thorough analysis due to a finding of insufficiency on the first element, assuming that a higher court were to establish that the decedent did have a Fourth Amendment right applicable to this case, the officer would not have known of this interpretation at the time of the shooting.

## IV. Conclusion

Plaintiff has not produced any direct evidence which directly contradicts Defendant's set of material facts, and has therefore not offered direct evidence that Defendant may have been unreasonable to the extent that his actions would both destroy qualified immunity from suit and subject him to liability under Plaintiff's alleged claim. For the above reasons, Motion of Defendants for Summary Judgment will be **GRANTED.** The instant action is hereby **TERMINATED** from the dockets of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.